REPUBLIC STEEL CORPORATION, ET AL., PLAINTIFFS, *v.* UNITED STATES, ET AL., DEFENDANTS, AND AKTIENGESELLSCHAFT DER DILLINGER HUETTENWERKE, DEFENDANT-INTERVENOR

Court No. 82-6-00909

Before WATSON, *Judge.*

(Dated July 15, 1982)

*J. Paul McGrath, Esq.,* Assistant Attorney General, for the defendant, by *Velta A. Melnbrencis, Esq.,* trial attorney, of counsel.

*Cravath, Swaine, & Moore, Esqs.,* for the plaintiffs, by *Alan J. Hruska, Esq., Joseph R. Sahid, Esq.,* and *Steven G. Schulman, Esq.,* of counsel.

United States Steel Corporation, *amicus curiae,* by its Law Department; *D. B. King, J. J. Mangan* and *Leslie Ranney, Esqs.,* of counsel.

*Windels, Marx, Davies & Ives, Esqs.,* for the intervenor Aktiengesellschaft der Dillinger Huettenwerke, by *Pierre F. deRavel d'Esclapon* and *Anthony A. Dean Esqs.,* of counsel.

WATSON, *Judge:* This action was brought on June 27, 1982 to obtain judicial review of a finding, made in the course of a countervailing duty investigation, by the International Trade Administration of the Department of Commerce, (ITA) that certain coal subsidies were not a subsidy to the steel industry of the Federal Republic of Germany (FRG).

On June 30, 1982, plaintiffs moved, by means of an Order to Show Cause, to have the adjudication of the case expedited to the extent of having it ready for hearing and decision on July 15, 1982. On the July 6, 1982 return date of the Order to Show Cause the government moved to dismiss the action, leading the Court to hold the question of expedition in abeyance, and to utilize the July 15 date for the hearing and resolution of the Motion to Dismiss.

The Court having read and heard the arguments of the parties and *amicus* U.S. Steel Corporation, is of the opinion that the Motion to Dismiss ought to be denied.

The finding in dispute was one of many contained in a preliminary determination by the ITA under 19 U.S.C. § 1671b(b) and was

---

industry under the initial investigation were quite different from those considered in the second investigation, and that the data showed that the earlier favorable trends had reversed 45 FR 30188 (1980). Of course, in reviewing the Commission's negative determination in the first investigation, the Court could not—and thus did not—consider the new record before the Commission in the second investigation, which lead to an affirmative determination.

published on June 17, 1982 (47 F.R. 26325). The object of the preliminary determination was to decide whether there was a reasonable basis to believe or suspect that certain steel products from the FRG were being subsidized, and, if so, to estimate the net subsidy, order the suspension of liquidation of entries of the products and require the posting of bonds sufficient to insure the payment of an additional duty equal to the estimated subsidy. In reaching its conclusions the ITA found that some practices were subsidies and others were not. It also found that the subsidies were received in a significant amount by some producers, but only in *de minimus* amounts by Thyssen AG and Estel Hoesch-Werke AG, and the latter two firms were "excluded."

The Court cannot accept the major premise of the motion to dismiss, namely, that the ITA determination is a monolithic decision which must be viewed as "affirmative" in its entirety under the statute. Nor can the Court accept the corollary, the proposition that plaintiffs are only challenging negative "aspects" of an affirmative determination. The Court finds this position to be inconsistent with the legislative expression and intention and patently unreasonable.

In 19 U.S.C. § 1516a(a)(1)(B) Congress granted judicial review of "a negative determination" made under 19 U.S.C. § 1671b(b). It is clear that Congress did not consider these determinations in simplistic terms, as unitary or indivisible pronouncements.

In 19 U.S.C. § 1671b(c) it took pains to provide for the postponement of this determination in extraordinarily complicated cases and it referred specifically to those cases that involve numerous and complex alleged subsidies or those that create the need to determine which particular subsidies are used by individual producers. As plaintiffs point out, the same phrase, i.e., "a negative determination," is used to describe that which is judicially reviewable in the *final* ITA decision on subsidies in 19 U.S.C. § 1516a(2)(B)(ii). If it is not disputed that the decisions challenged here would be negative determinations in a *final* resolution, it would seem that they are no less negative in a preliminary decision. *Amicus* points to the use of the article "a" in referring to *a* negative determination rather than *the* negative determination. From the latter usage, one might have inferred a reference to a single, indivisible negative determination. From the former, and actual usage, the existence of numerous possible determinations is inferred.

All this textual and grammatical analysis serve to demonstrate that the characterization of this determination as an indivisible affirmative determination which cannot be judicially reviewed at this time is a highly questionable proposition. This would suffice to deny the motion to dismiss even if there were no legislative history. In this matter, however, the legislative history makes it unmistakeably clear that judicial review of these determinations was intended to reach every decision that a subsidy was not being pro-

vided—even if other subsidies were found to exist at the same time or if other producers were found to be subsidized.

Congress was well aware that it was establishing a highly pervasive scheme of judicial review in these matters, even to the point of providing judicial review while the investigations were continuing. It stated that it was providing for judicial review of "interim" decisions to avoid delay "which could make an ultimate resolution of an issue in a party's favor irrelevant because of the irreversible damage suffered during the interim period." S. Rep. No. 96–249, 96th Cong., 1st Sess., p. 245 (1979). It would be absurd to contend that the potential for damage which Congress foresaw, existed only when a determination was adverse in *every single respect.* It is far more reasonable to treat an investigation of this type, into the existence of more than one subsidy or involving more than one producer, as resulting in a series of discrete and severable determinations, each of which resolves a question of whether imported merchandise was receiving a subsidy. In these terms a preliminary determination that a particular practice is *not* a subsidy is a negative determination. A preliminary determination that a particular producer is *not* receiving a subsidy is a negative determination. Both results raise the possibility of interim damage because both allow the importation of merchandise during the interim period, free of the prospect of the assessment of countervailing duties with respect to alleged subsidies.

The specter of interference with the administrative process was obviously considered by Congress, the need for interlocutory judicial review was found to be more important, and the provision for expedited judicial review is the means of harmonizing these factors as much as possible.

For the above reasons, the defendants' motion to dismiss is denied.

The motion by United States Steel Corporation to consolidate its action (Court No. 82–6–00899) with this action is hereby granted.

The Court considers the date of August 24, 1982 (which is set for the final subsidy determination by the ITA) to mark the end of the interim period for which this judicial review was designed. Although a decision after that date could still be meaningful, it is best done earlier.

Accordingly, the Court finds that this action should be expedited for decision by August 5, 1982, to which end the defendants are ordered to answer the complaint by July 21, and to respond to plaintiffs' motion for administrative review (which has already been filed) by August 2. Plaintiffs shall then reply by August 5. In this action, filing and service shall mean actual delivery to the parties and the Court.